**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE DIVISION**

| | |
|---|---|
| **JUAN CARLOS OZUNA DUENAS** | **CIVIL ACTION NO. 26-1986** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE ALEXANDER C. VAN HOOK** |
| **DEPT. OF HOMELAND SECURITY, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

# REPORT AND RECOMMENDATION

Petitioner Juan Carlos Ozuna Duenas,[1] a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions for a writ of habeas corpus under 28 U.S.C. § 2241.[2] Respondents oppose the petition. [doc. # 9]. For reasons below, the Court should deny the petition.

## Background

Petitioner is a citizen of Cuba. He entered the United States of America on approximately May 22, 2024. [doc. # 1-2, p. 4].

On June 27, 2024, an immigration judge "affirmed the negative credible fear determination by DHS and returned the case to DHS for removal." [doc. # 9]. Neither party disputes that Petitioner is subject to a final removal order.

---

[1] Petitioner's "A Number" is 249-045-884.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

On August 7, 2025, Petitioner submitted an "application under the Cuban adjustment act . . . in full compliance with all statutory requirements for consideration." [doc. # 1-2, p. 13]. On September 5, 2025, Petitioner "attended [a] USCIS appointment to provide [his] fingerprints[.]" [doc. # 1, p. 13]. On October 15, 2025, ICE detained Petitioner. [doc. #s 1, p. 4; 1-2, p. 13].

Petitioner filed this proceeding on approximately June 11, 2026. He claims that ICE has detained him for a prolonged period and is not likely to remove him in the near future. [doc. # 1, p. 6]. He states that he has cooperated with ICE by providing fingerprints, identification documents, and information about his country of birth and country of citizenship. [doc. # 1-2, p. 4]. "Nonetheless," according to Petitioner, "ICE has been unable to remove" him. *Id.* at 5. He received a letter from the Cuban consulate stating that it would not accept him and that ICE has transferred him to the border with Mexico twice. *Id.*

Respondents opposed the petition on July 23, 2026. [doc. # 9]. Petitioner has not filed a reply.

## **Law and Analysis**

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." Under Section 1231(a)(6), "An alien ordered removed who is inadmissible[,] . . . removable[,] . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." In *Zadvydas*, 533 U.S. at 682, the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533 U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S.Ct. 2491. After that, the Court concluded, if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien." *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533 U.S. at 699).[3] "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701. If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.

"[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700.

Here, Petitioner fails to meet his burden of providing good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

Respondents present the July 22, 2026, declaration of Supervisory Detention and Deportation Officer Stephen Allport, who declares in part:

[3] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

3) On or about May 30, 2024, the Petitioner was taken into custody at the Joe Corley Processing Center after being encountered by a Border Patrol Agent at or near the Rio Grande Valley, TX.

4) On or about July 18, 2024, Petitioner's Cuban nomination package was uploaded and forwarded for consideration. Petitioner's case was pending a response or approval.

5) On or about July 26, 2024, the Government of Cuba denied repatriation; therefore, there was not a significant likelihood of removal in the reasonably foreseeable future and Petitioner was removed from charter plans.

6) On or about August 8, 2024, ERO released the Petitioner on an Order of Supervision.

7) On or about October 15, 2025, the Petitioner was encountered reporting to the ICE/ERO Little Rock office in Little Rock, AR. He was then taken into custody without incident.

8) On or about October 22, 2025, Petitioner's I-860, Notice and Order of Expedited Removal and I-296, Notice to Alien Ordered Removed/Departure Verification were requested by the docket officer. Petitioner's case was pending further processing until receipt.

9) On or about October 27, 2025, Petitioner's Cuban Nomination packet was submitted and pending until receipt.

10) On or about October 31, 2025, Petitioner's Cuban Nomination packet was still pending.

11) On or about November 15, 2025, the docket officer emailed requesting an update on the Petitioner Cuban Nomination.

12) On or about November 21, 2025, the docket officer followed up on the Petitioner's Cuban Nomination request.

13) On or about December 2, 2025, the Petitioner's physical passport was in the A file. On or about the same day, Cuban Nomination request was still pending receipt.

14) On or about January 2, 2026, Petitioner's case was pending Headquarters advise for scheduling.

15) On or about January 20, 2026, Petitioner's case was pending scheduling.

16) On or about February 4, 2026, the Petitioner's case was scheduled for removal.

17) On or about February 5, 2026, the third country removal notice was served on Petitioner. A copy of the notice was uploaded. The Removal packet was forwarded to the travel team for scheduling.

18) On or about February 9, 2026, the Petitioner was transferred from Winn Correctional Center to the Port Isabel Service Processing Center.

19) On or about February 20, 2026, the Petitioner was determined to be a Failure to Comply for a Third Country Removal to Mexico at the Hidalgo, TX point of entry and would be returned to his originating area of responsibility.

20) On or about February 22, 2026, the Petitioner was returned to the Pine Prairie ICE Processing Center.

21) On or about April 7, 2026, the docket officer requested an alternate third country of removal from ERO Headquarters. The officer specified the Failure to Comply at Hidalgo and that the Petitioner did not have a significant likelihood of removal in the reasonably foreseeable future with Cuba.

22) On or about May 14, 2026, the docket officer requested an update on assistant for the alternate third country of removal from ERO Headquarters.

23) On or about June 24, 2026, the docket officer set a status update request to ERO Headquarters for an alternate third country removal. On or about the same day, the docket officer submitted a Third Country Removal Notice out for service on Petitioner.

24) As of the date of this declaration, ERO is actively working to find the Petitioner a third country of removal other than Mexico. The Petitioner has refused to comply with removal to Mexico.

[doc. # 9-1, pp. 1-2].

Petitioner does not dispute the above declarations. He has not cooperated in efforts to remove him. As above, on approximately February 20, 2026, Petitioner failed to comply with "a Third Country Removal to Mexico . . . ." *Id.* at 1. Petitioner "has refused to comply with removal to Mexico." *Id.* at 2.

Petitioner, not ICE, prolonged his detention and diminished his likelihood of removal (at that time) by thwarting his removal. *See Pelich v. INS*, 329 F.3d 1057, 1060 (9th Cir. 2003) ("[T]he detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock.") (cited with approval by *Hook v. Lynch*, 639 F. App'x 229, 230 (5th Cir. 2016) (denying a petition where the petitioner failed to cooperate with efforts to remove him)).[4]

There is no indication that Petitioner is now cooperating or intends to cooperate with removal efforts. Petitioner, therefore, fails to establish that there is no significant likelihood of removal in the reasonably foreseeable future. *See Gonzalez v. Gills*, 2022 WL 1056099, at *1 (5th Cir. Apr. 8, 2022) (opining, where the petitioner impeded his removal, that the district court did not err in determining that the petitioner failed to show that there was no significant likelihood of his removal in the reasonably foreseeable future if he cooperated).[5] The

[4] *See also Lusanga v. Ramos*, 2019 WL 2851759, at *2 (W.D. La. 2019) ("An alien is not entitled to relief for a delay that he himself has intentionally caused by deliberately obstructing his otherwise imminent deportation; it would be inequitable to allow him to benefit from that delay.").

[5] *See also Oladokun v. U.S. Atty. Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012) ("In contrast to the petitioner in *Zadvydas,* who could not be removed because the receiving countries refused to accept him, Oladokun's non-cooperation is the only barrier to his removal. The Department

Government is actively attempting to remove Petitioner, and Petitioner provides no indication that it will not succeed if he begins cooperating.[6]

Accordingly, Petitioner's detention remains reasonable. He may re-file his claim/petition if he develops good reason to believe, in light of any changes in circumstance or new evidence—beginning with his full cooperation with efforts to remove him—that his removal is not significantly likely in the reasonably foreseeable future. *See, e.g., Adefemi v. Gonzales*, 228 F. App'x 415, 416-17 (5th Cir. 2007).[7]

---

could have removed Oladokun to Nigeria, but for his misconduct at the airport."); *Linares v. Dep't of Homeland Sec.*, 598 F. App'x 885 (11th Cir. 2015) (reasoning, where the detainee refused to board a plane, that the petitioner could not meet his burden and that there was a significant likelihood that he would be removed "as soon as he cease[d] obstructing the government's efforts to remove him."); *Iwuoha v. Viator*, 2014 WL 4678860, at *3 (W.D. La. Sept. 19, 2014) ("[I]t is clear that Nigeria is willing to accept Petitioner—travel documents for Petitioner had already been issued and Petitioner was in the process of boarding the airplane bound for Nigeria when his own intentional criminal conduct intervened."); *Sam-Kabba v. Napolitano*, 2013 WL 5960670, at *1 (W.D. La. Nov. 6, 2013).

[6] The Cuban government "denied" repatriation. [doc. # 9-1, p. 1]. Under 8 U.S.C.A. § 1231(b)(2)(E), "If an alien is not removed to a country under the previous subparagraphs of this paragraph, the Attorney General shall remove the alien to any of the following countries: (i) The country from which the alien was admitted to the United States. (ii) The country in which is located the foreign port from which the alien left for the United States or for a foreign territory contiguous to the United States. (iii) A country in which the alien resided before the alien entered the country from which the alien entered the United States. (iv) The country in which the alien was born. (v) The country that had sovereignty over the alien's birthplace when the alien was born. (vi) The country in which the alien's birthplace is located when the alien is ordered removed. (vii) If impracticable, inadvisable, or impossible to remove the alien to each country described in a previous clause of this subparagraph, another country whose government will accept the alien into that country."

[7] Of note, Under 8 U.S.C. § 1231(a)(1)(C), "The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." Applying Section 1231(a)(1), the Fifth Circuit Court of Appeals reasoned in two unpublished opinions that when a detainee fails to cooperate with efforts to remove him, the "removal period" under Section 1231(a)(1)(A), is effectively tolled. *Hook*, 639 F. App'x at 230 (unpub.); *Gonzalez v. Gills*, 2022 WL 1056099, at *1 (5th Cir. Apr. 8, 2022) (unpub.). Here, the

## Conclusion

For the reasons above, **IT IS RECOMMENDED** that Petitioner Juan Carlos Ozuna Duenas's petition be **DISMISSED WITHOUT PREJUDICE** to Petitioner's right to re-file his claim of prolonged detention if he has good reason to believe, in light of any changes in circumstance or new evidence, that his removal is not significantly likely in the reasonably foreseeable future.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See***

---

undersigned need not determine if Petitioner's actions tolled the statutory removal period in Section 1231(a)(1)(A) because, regardless, he is not entitled to relief under *Zadvydas*. That said, it is worth noting that Section 1231(a)(1)(C), "evidences Congress' intent to permit continued detention when an alien refuses to cooperate and attempts to thwart the INS' efforts to deport him." *Lema v. I.N.S.,* 214 F. Supp. 2d 1116 (W.D. Wash. 2002). Otherwise stated, Congress plainly declined to fault the government for failing to remove a detainee by a deadline when the detainee fails to cooperate in effecting his removal.

***Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 24th day of August, 2026.

Kayla Dye McClusky
United States Magistrate Judge